IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Johnnie Jones, | ) | Case No. 8:14-cv-04556-RMG-JDA |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Joseph McFadden, | ) | |
| | ) | |
| Respondent. | ) | |

This matter is before the Court on Respondent's motion for summary judgment and Petitioner's motion to expand the record.  [Docs. 18, 28.]  Petitioner, proceeding pro se, is a state prisoner who seeks relief under 28 U.S.C. § 2254.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

Petitioner filed this Petition for writ of habeas corpus on November 24, 2014.[1]  [Doc. 1.]  On April 9, 2015, Respondent filed a motion for summary judgment and a return and memorandum.  [Docs. 18, 19.]  On the same day, the Court filed an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the summary judgment procedure and of the possible consequences if he failed to adequately respond to the motion.  [Doc. 20.]  Petitioner filed a response in opposition on July 27, 2015.  [Doc. 38.]  On May 29, 2015, Petitioner filed a motion to expand the record [Doc. 28], and Respondent filed a response in opposition on June 12, 2015 [Doc. 33].

_____

[1]A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court.  *See Houston v. Lack*, 487 U.S. 266, 270 (1988).  Accordingly, this action was filed on November 24, 2014.  [Doc. 1-4 at 1 (envelope marked as received by prison mailroom on November 24, 2014).]

Having carefully considered the parties' submissions and the record in this case, the Court recommends that Respondent's motion for summary judgment be granted and Petitioner's motion to expand the record be denied.

## **BACKGROUND**

Petitioner is incarcerated in the Allendale Correctional Institution[2] of the South Carolina Department of Corrections pursuant to orders of commitment from the Clerk of Bamberg County.  [Doc. 1 at 1.]  Petitioner was indicted in June 2007 for assault and battery with intent to kill and attempted kidnapping. [App. 411–14.[3]] On April 13–14, 2010, represented by Dan Luginbill ("Luginbill") and Kent Kirkland, Petitioner proceeded to trial.[4] [App. 1–294.]  At the conclusion of the trial, the jury returned a verdict of guilty on the charges of attempted kidnapping and assault and battery of a high and aggravated nature. [App. 284.] Petitioner was sentenced to 18 years for the attempted kidnapping charge and 10 years for the assault and battery of a high and aggravated nature charge, to run

---

[2]At the time he filed the Petition, Petitioner was confined at Lieber Correctional Institution, where the warden is Respondent Joseph McFadden [Doc. 1 at 1], but on May 26, 2015 Petitioner filed a notice of change of address updating his address, and he is currently confined at Allendale Correctional Institution [Doc. 25]. A prisoner's immediate custodian—the warden of the facility where the prisoner is being held—is the proper respondent in a habeas corpus action because the immediate custodian has the power to produce the prisoner's body before the habeas court.  *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004).  If a prisoner properly files a habeas petition naming the prison warden as the respondent and is relocated to another prison before the court decides whether or not to grant the petition, the court "retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." *Id.* at 441 (discussing *Ex parte Endo*, 323 U.S. 283 (1944)).  Thus, this Court retains jurisdiction over the Petition following Petitioner's transfer to Allendale Correctional Institution.

[3]The Appendix can be found at Docket Entry Numbers 19-1 through 19-3.

[4]Petitioner was represented by two attorneys at trial; however, it appears that Petitioner is bringing this action against only Luginbill. [*See* Doc. 1 at 19 (Petition listing Luginbill as trial counsel).]

concurrent.  [App. 292.]

**Direct Appeal**

Petitioner appealed his conviction. Wanda J. Carter ("Carter") of the South Carolina Commission on Indigent Defense filed a brief on Petitioner's behalf, dated February 11, 2011, in the South Carolina Court of Appeals, raising the following issue:

> The trial judge erred in allowing the accuser's identification testimony into evidence at trial because the highly suggestive out-of-court identification procedure used by police where only one photograph was displayed in the photographic layout and shown to the accuser resulted in an unreliable identification and a misidentification in the case.

[App. 298.]  The South Carolina Court of Appeals affirmed the decision of the lower court in an unpublished opinion filed January 25, 2012.  [App. 307–08.]  Remittitur was issued on February 14, 2012.  [Doc. 19-5.]

**PCR Application**

On April 30, 2012, Petitioner filed a pro se application for post-conviction relief ("PCR"), in which he alleged he was being held in custody unlawfully based on the following grounds:

> (a)     Ineffective Assistance of Counsel

[App. 311.] As supporting facts for his grounds, Petitioner attached a document to his PCR Application, quoted substantially verbatim:

> Issue (A) WAS COUNSEL INEFFECTIVE FOR FAILING TO OBJECT TO THE SOLICITOR'S IMPROPER CLOSING THAT VIOLATED THE GOLDEN RULE AND DENIED PETITIONER HIS RIGHT TO A FAIR TRIAL?
>
> FACTS

3

Petitioner asserts he was denied the effective assistance of trial counsel when counsel failed to object to the solicitor's improper closing that impermissibly violated the "Golden Rule". Petitioner asserts the closing used references of I and you and the language used could have reasonably led the jury to believe the solicitor was placing them in the shoes of Petitioner.

\*\*\*

[T]he solicitor not only invoked the Golden Rule but as is seen in the underline portions above the prosecution went on the "vouch" for witnesses testimony in order to "bolster" the credibility of the State's case.

DISCUSSION

Petitioner asserts he was denied his constitutionally guaranteed right to the effective assistance of counsel when counsel failed to object to the prosecution's improper closing argument that violated the Golden Rule and resulted in impermissible vouching that denied Petitioner his right to a fair trial.

\*\*\*

The Golden Rule argument, suggesting to jurors as it does, that they put themselves in the shoes of one of the parties, is generally impermissible because it encourages the jurors to depart from the neutrality and to decide the case on the basis of personal interest and biases rather than on the evidence. Regardless of the nomenclature used, any argument that importunes the jurors to place themselves in the shoes of one of the parties is disallowed[.]

The Court, quoting State v. Gilstrap, reasoned, "the rule in the State and we think in most jurisdictions, is that upon the whole case, it appears to the court that the defendant was prejudiced by the language used, as a result of which he did not have a fair and impartial trial, it would be the duty of the court to reverse the case and remand for new trial." The court further opined "an argument of this nature addressed to the jury tends to completely destroy and nullify all sense of impartiality in a case of this kind. It's logical affect is to arouse the passions and prejudices of the jury. Jurors are sworn to be

4

governed by the evidence and it is their duty to regard the facts of the case impersonally.  Id at 417.

***

For the aforemention reasons, Petitioner respectfully prays this Court will grant the requested relief of a new trial.

ISSUE (B) <u>WAS COUNSEL INEFFECTIVE FAILING TO REQUEST THE TRIAL COURT INSTRUCT THE JURY ON THE ESSENTIAL ELEMENT OF "CRIMINAL INTENT", WHICH IS AN ESSENTIAL ELEMENT OF EVERY COMMON LAW OFFENSE?</u>

FACTS

Petitioner asserts he was denied the effective assistance of counsel when counsel failed to  request the Trial Court to instruct the jury on the essential element of "criminal intent."

***

As was seen above the Trial Court used repeated references to "criminal intent" coupled with the doing of a "wrongful act" instruction that was confusing, overlaping and misleading in such that a reasonable jurist could have interpreted this instruction to be over broad and vague to the point the jury was lead to believe that Petitioner was guilty but of what offense.

Petitioner asserts that counsel was ineffective for failing to request the Trial Court to instruct the jury on the essential element of criminal intent, and the failure to do so denied Petitioner his right to the effective assistance of counsel and his right to a fair trial.

DISCUSSION

Petitioner asserts counsel was constitutionally ineffective for failing to request the trial court to instruct the jury on the essential element of "criminal intent."  The jurors are believed to follow the instructions of the trial court[.]

5

As was seen <u>supra</u> the Trial Judge's instructions included repeated references to "intent", yet the Court never instructed the jury on what "criminal intent" entails and how the jury is to assess criminal intent in rendering their verdict. The definition of assault and battery with "intent" to kill in no wise affects the ingredients which are necessary to constitute the offense of assault and battery intent to kill and assault and battery high aggravated nature, but leaves therm exactly and in every particular as they stood at common law[.] Consequently, the element of "criminal intent" though not alluded to in the statutory definition of assault and battery high aggravated nature, still is a necessary element in South Carolina under common law practice[.]

                                    ***

The Court went to charge the jury, that "you got several things, You got assault. You got battery. You got an "unlawful act" of a violent nature and you got malice aforethought. The battery is the "unlawful" touching of another person by a person who has committed the assault. In other words, you draw back and that's the assault. You hit, that's battery. That's the "unlawful" touching, assault and battery. The battery is the "unlawful" touching of another person by a person who has committed the assault. An "unlawful" touching can be caused by a part of the accused's body.

Petitioner asserts the Court instructions were confusing and overlaping to the point that without being instructed on the element of "criminal intent" the Court's repeated reference to "unlawful act" allowed the jury to render a verdict of guilty on an erroneous jury instruction since the instruction lacked the essential element of "criminal intent".

Petitioner asserts that counsel was ineffective for failing to request the trial court to instruct the jury on the element of criminal intent. Had counsel requested the instruction and the Court charged the jury with the proper instruction there is a reasonable probability that, but for this error the results of the trial would have been different.

For the aforementioned reason, Petitioner respectfully prays this court grant the requested relief of a new trial.

6

[App. 316–24 (citations omitted).]  Petitioner filed an amended PCR application, dated August 1, 2012, alleging the following issues[5]:

1. Trial counsel was ineffective in failing to object to the solicitor's improper closing.  The closing argument violated the "golden rule" by asking the jury to place themselves in Petitioner's shoes.

2. Trial counsel was ineffective in failing to request a jury instruction on the essential element of criminal intent.  The instruction given by the trial court was misleading and could have been interpreted as overly broad.

3. Trial counsel was ineffective in failing to object to or move to quash an unlawful indictment on which Petitioner was found guilty.  The indictments for the charges of assault and battery with intent to kill and attempted kidnapping were signed and true-billed on May 31, 2007; however, the grand jury did not convene until June 4, 2007.

4. Trial counsel was ineffective in failing to object to the in-court identification of Petitioner because the prior out-of-court identification procedure was suggestive and created a substantial likelihood of misidentification.  The witness was shown a line-up of one picture which is impermissibly suggestive.

5. Trial counsel failed to investigate and interview witnesses that would have shown that Petitioner has an identifying limp and could not have run away.

6. The trial court erred in allowing the defective chain of custody into evidence.

7. The trial court erred in allowing the testimony James Grant to be presented to the jury without a curative instruction.

8. The trial court erred in denying trial counsel's motion for a new trial.

9. Appellate counsel was ineffective in failing raise the following issues on direct appeal:

---

[5] Petitioner's claims and supporting arguments in his amended PCR application are lengthy and repetitive.  The Court construes it as alleging the following.

(a)  The chain of custody was defective and insufficient.  This ground was preserved because objections had been made at trial.

(b)  The trial court's denial of trial counsel's motion for a mistrial or corrective instruction that the jury should disregard the testimony of a "non-responsive" or possibly incompetent witness.  Trial counsel did not have the opportunity to meaningfully cross examine witness James Grant.

(c)  The trial court's should not have denied trial counsel's motion for a new trial when  the jury asked to review certain testimony and then rendered a verdict before they could hear the requested testimony.

10.  Appellate counsel failed in her duty to Petitioner in that she did not file an *Anders* brief or transcript with the Supreme Court of South Carolina.  Appellate counsel presented an issue that was not preserved and was more appropriate for PCR.

[App. 332–59.]  The State filed a return, dated August 6, 2012.  [App. 328–31.]

A hearing was held on July 8, 2013, at which Petitioner was represented by Charles T. Brooks.  [App. 360–94.]  An order denying and dismissing the PCR application with prejudice was filed by the PCR court on August 23, 2013.  [App. 401–09.]

A notice of appeal was timely filed.  Carter filed on Petitioner's behalf a *Johnson*[6] petition for writ of certiorari, dated May 5, 2014, in the Supreme Court of South Carolina asserting the following as the sole issue presented:

Trial counsel erred in failing to communicate the state's plea offer presented in the case because but for this omission, petitioner would have accepted the plea offer and received a sentence that was more lenient than the sentence he received at trial

[Doc. 19-6 at 3.]  Petitioner filed a pro se petition for writ of certiorari, dated May 28, 2014,

_____

[6]A *Johnson* petition is the state PCR appeal analogue to an *Anders* brief; a brief filed pursuant to *Anders v. California*, 386 U.S. 738 (1967), effectively concedes the appeal lacks a meritorious claim. *See Johnson v. State*, 294 S.C. 310, 364 S.E.2d 201 (S.C. 1988)

8

asserting the following issues, quoted substantially verbatim:

> [1.] The Petitioner writ of certiorari should be remanded back to the lower court to address issues that the . . . PCR court failed to address in the order denying Petitioner's PCR.
>
> [2.] The lower court record does not support the finding that Petitioner knowingly or voluntarily waived any of his PCR allegations.

[Doc. 19-7.] The Supreme Court of South Carolina denied the petition and granted Carter's petition to withdraw on September 24, 2014 [Doc. 19-8] and remitted the matter to the lower court on October 10, 2014 [Doc. 19-9].

**Petition for Writ of Habeas Corpus**

As previously stated, Petitioner filed the Petition on November 24, 2014. [Doc. 1.] In his Petition, Petitioner raises the following grounds for relief, quoted substantially verbatim:

> **Ground One**:    Trial counsel was ineffective in violation of Petitioner's rights under the 6th and 14th Amendments to the U.S. Constitution for failing to communicate the State's written plea offers presented in the case because but for this omission Petitioner would have accepted the plea offer and received a sentence that was more lenient than the sentence Petitioner received at trial.
>
> *Supporting Facts*:    Mr. Daniel Luginbill, trial counsel rendered constitutionally deficient assistance for failing to advise Petitioner of three plea offers—Mr. Luginbill testified at Petitioner PCR evidentiary hearing that the State never agreed to a possible three-year offer by the defense, and that there was a ten-year sentencing option presented on the assault charge. . . . Petitioner testified that there was a three-year plea offer by the State that Mr, Luginbill never advised him of prior to trial. Accordingly, the PCR court and the South

9

Carolina Supreme Court erred in finding that Applicant had not shown that trial counsel's performance fell below "professional norms."

Although Mr. Luginbill testified at the PCR evidentiary hearing that "he presented various plea offers to the solicitor—the solicitor never accepted any of the offers.["]   Trial counsel further testified that the solicitor never offered a plea deal in the instant case.  There was three plea offers Petitioner received after trial.

Petitioner forwarded to PCR counsel, Mr. Charles Brooks, copies of three different written plea offers: (1) a plea offer from "Ms. Carol Summers ("solicitor") offering a plea deal of an "eight year" cap for ABWIK and dismiss the attempted kidnapping and car jacking charges. . . . (2) plea offer from Chief Preacher of the Ehrhardt Police Dep't offering to drop kidnapping and carjacking, reduce ABWIK to ABHAN and recommend probation. . . .  PCR counsel has Petitioner's copy of written three-year plea offer.

Trial counsel rendered ineffective assistance of trial counsel in violation of Petitioner's Sixth and Fourteenth Amendment rights to the effective assistance, in that, counsel's inadequate assistance caused the non-acceptance of plea offer(s) and further proceedings led to a less favorable outcome, or allowed plea offers to lapse.

Trial counsel's performance was deficient and fell below an objective standard for reasonableness when trial counsel failed to advise Petitioner that three different plea offers prior to Petitioner's case being called for trial.

Petitioner was prejudiced by trial counsel's deficient performance, as there is a reasonable probability Petitioner would have pled guilty, "the court would have accepted its terms," and that the sentence would have been significantly less

severe than under the judgment and sentence that in fact were imposed.

The PCR court and the South Carolina Supreme Court's review per Johnson petition and denial, erred in finding that trial counsel provided effective assistance of counsel.

**Ground Two:**     Appellate counsel was ineffective in violation of Petitioner's rights under the 6th and 14th Amendments to the United States Constitution for failing to raise on direct appeal, the substantial issue of "defective/insufficient chain of custody."

*Supporting Facts*:     Appellate counsel, Wanda H. Carter rendered constitutionally deficient assistance of appellate counsel, thus, denying petitioner his 14th Amendment Due Process right to effective assistance of counsel on his first [direct] appeal of right, in her failure to present an obvious and significant issue that was stronger than the one presented, as trial counsel's objection encompassed several pages. One officer with the Erhardt Police Dep't, Officer Jamie Bearden testified that he collected evidence (jacket and stocking cap), placed in a brown paper bag-[clothes I and sealed it up. . . .  That the white bag [plastic] was not the bag he placed jacket and stocking cap in.

State's witness and police officer Sandra Tavanis, testified that she put evidence in white bag; that white bag was the bag she first saw jacket and that she did not recognize stocking cap.

There's no stocking cap on "SLED Forensics 'Evidence Log Sheet'" signed by Ms. Tavanis.

During cross examination, Ms. Tavanis testified that:

She did not search jacket pockets because the bag was sealed but wasn't sealed;

11

That she [Ms. Tavanis], assistant solicitor [Ben Moore] and solicitor's investigator, Mr. Bamberg, put evidence in bag; that prior to June 2007, the bag was not sealed while in evidence room;

When asked "And you have that bag that you took it out of here today, do you?" Ms. Tavanis replied affirmatively, "That is the bag. That it was the bag she first saw jacket in—that the first time she saw it [physical evidence] the physical evidence was already in this bag [white] and that she did not put it there."

On direct by state, after recall"

Ms. Tavis then testified that she remembered there was a paper bag that had been stapled, that before she turned [physical] evidence over to SLED in June, assistant solicitor Ben Moore and his investigator Mr. Bamberg wanted to inspect the evidence;

That she [Ms. Tavanis] attempted to get staples out of the bag nicely without tearing it;

That Mr. Moore told her to tear the bag open for them to inspect the evidence;

That it was a regular brown bag that you could get at the grocery store; and that she could not cover the evidence with tore up and; that she asked Mr. Moore what he wanted her to do and that he told her to "just put it in the other bag["];

That she [Ms. Tavanis] threw the brown paper bag away because it did not have nothing to do with evidence. That she sealed the bag [white plastic] and transported it to SLED, the next morning.

Ms. Tavanis again on cross:

Ms. Tavanis testifies that she did note seal an sign over to document tat she was the person sealing white bag;

12

Ms. Tavanis testified that she did not recall whether the brown paper bag was sealed by Officer Bearden before she threw it away; that the Ehehardt police dep't did not have a written policy or procedures on handling and logging evidence;

That after hearing trial counsel's arguments concerning the discrepancies in the bags [brown paper; white plastic] that she was changing her testimony; and

After being told that this "chain of custody" problem could cost the state that case, Ms. Tavanis, testified that "she was changing her testimony, that she was stuck on stupid the day before was the only way to put it.

Here, appellate counsel, Ms. Carter, failed to raise this obvious and significant error, that was objected to on three occasions and covered numerous pages in the trial transcript.

Petitioner was prejudiced by Ms. Carter's deficient performance, and absent her deficiencies, there is a reasonable probability that the outcome of the appeal to the state's highest court would have been different.

In the instant case, this evidence should not have been admissible and as objected to an pointed out to the trial court: the windbreaker was not even remotely to description of coat given by the victim—as victim testified, "It was an Army trench coat, dark blue/black with heavy buttons on it and the length well below the knees because it obscured the pants perpetrator."

The jacket does not match description of coat, state's witness, James Grant testified first that he gave him [Petitioner] and the testified that he did not given Petitioner a coat.  Here, the trial court erred in admitting the windbreaker and stocking cap.

13

Appellant counsel's failure to raise this obvious and substantial issue on direct appeal denied Petitioner his 14th Amendment Due Process right to effective assistance of counsel on his first appeal of right from his conviction and sentence.

**Ground Three:**       Appellate counsel was ineffective, in violation of Petitioner's rights under the Sixth and fourteenth Amendments to the United States Constitution for failing to raise on direct appeal the issue of the trial court's denial of a motion for a mistrial or curative instruction that jury disregard everything said by a "non-responsive" or possibly incompetent person.

*Supporting Facts*:       Appellate counsel failed to raise this obvious and significant issue, thus, denying Petitioner his 14th Amendment Due Process right to effective assistance of appellate on direct appeal. State's witness, James Grant, testified he was hard of hearing but he appeared to not understand questions, answering questions totally out of the frame of questions—and when trial counsel attempted to question Mr. Grant, he said that his hearing aid battery was dead—Bailiff went and purchased battery; Mr. Grant resumes his testimony, he appears to answer incoherently at times, nodding his head at times, and not directly in response to questions being asked of him; During questioning on cross, Mr. Grants: Testimony again was not in response . . . . Mr. Grant, he said that his hearing aid battery was dead—Bailiff went and purchased battery;

Mr. Grant resumes his testimony, he appears to answer incoherently at times, nodding his head at times, and not directly in response to questions being asked of him;

During questioning on cross, Mr. Grant's:

Testimony again was not in response to questions, nodding his head, and testifies that he [Grant] signed stated statement but did not write

14

the middle, that someone else wrote it, that he ad given Petitioner a coat and, then testified that he did not give Petitioner a coat;

Trial counsel made a motion that he didn't have the opportunity to adequately cross-examine Grant, that he did not believe Grant to be a competent witness; or

Trial counsel then requested a mistrial; or a corrective instruction that the jury be instructed to disregard everything Grant said; the trial court denied motion(s).

Appellant again rendered deficient assistance for failing to this issue as it is obvious and significant.  Petitioner was prejudiced by Ms. Carter's deficient performance, and absent her deficiencies, there is a reasonable probability that the outcome of the appeal to the state's highest court would have been different[.]

**Ground Four:**     Appellate counsel was ineffective, in violation of Petitioner's rights under the 6th and 14th Amendments to the United States Constitution for failing to raise on direct appeal the issue of trial court denying motion for a new trial based on jury requesting to review testimony of an expert State's witness who contradicted her previous trial testimony committing perjury without the jury having reheard her testimony.

*Supporting Facts*:     During the jury deliberations, the jury sent a note to the court requesting a copy of transcript of Sandra Tavanis; the court responded that it did not have a transcript, that her [Tavanis] testimony or portions thereof could be re-played if they wished; The jury comes back into court and the testimony of Ms. Tavanis is played to the jury, the jury again requested that testimony be played/replayed again but louder. . . .

The court then informs the jury that that's about as good as it gets and advises that they [Court] can try another procedure, to step back and

continue to work, that if he could get it to work they would be called back out; within minutes a verdict of guilty was rendered.

Trial counsel made a motion prior to sentencing, asking for a new trial based on—the jury asking a question to review the transcript and that they [jury] rendered a verdict prior to ever getting that transcript read to them or being able to hear the testimony of Ms. Tavanis;

Based on that, trial counsel brought to the attention of the trial court . . .  The court then informs the jury that thats about as good as it gets and advises that they [Court] can try another procedure, to step back and continue to work they would be called back out; within minutes a verdict of guilty was rendered.

The trial court again committed error.  The trial court denied the fact finders their request to hear [clearly] or have the testimony [again] [played louder] of a State's witness—law enforcement officer—whom had the most wholly incredible testimony before the court, the finders of fact, the public, and the Petitioner.  Ms. Tavanis perjured herself and/or committed fraud upon the court.

Under the Due Process Clause of the Fourteenth Amendment, the Petitioner's conviction is illegal, in that, the state's evidence was tampered with, altered and mishandled and swapped.  Ms. Tavanis' testimony and handling of evidence and destroying evidence—Tavanis bla[t]ant misconduct has not only harmed an and destroys the integrity of the Petitioner's trial resulting in a fundamental miscarriage of justice.

Appellate counsel, Ms. Carter, failed to raise this obvious an significant fact that leaps out of the transcript even upon a casual reading and Ms. Carter, did deny Petitioner of his 14th Amendment right to the effective assistance of appellate counsel.

16

> Ms. Carter basically filed an <u>Anders</u> brief without
> even comporting with <u>Anders</u> procedures.

[Doc. 1 (some alterations in original).]

As stated, on April 9, 2015, Respondent filed a motion for summary judgment. [Doc. 18.]  On July 27, 2015, Petitioner filed a response in opposition.  [Doc. 33.]  Petitioner filed a motion to expand the record on May 29, 2015 [Doc. 28] and Respondent filed a response in opposition on June 12, 2015 [Doc. 33]. Accordingly, the motions are ripe for review.

## APPLICABLE LAW

**Liberal Construction of Pro Se Petition**

Petitioner brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).  Pro se pleadings are held to a less stringent standard than those drafted by attorneys.  *Haines*, 404 U.S. at 520.  Even under this less stringent standard, however, the pro se petition still may be subject to summary dismissal.  *Id.* at 520–21.  The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999).  A court may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993).  Nor should a court "conjure up questions never squarely presented."  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved

17

for summary judgment:

> The court shall grant summary judgment if the movant shows
> that there is no genuine dispute as to any material fact and the
> movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  *Id.* at 324.  Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue.  *Id.*  Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion.  *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion.  *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or

18

unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56© has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

**Habeas Corpus**

> ***Generally***

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in

the State court proceeding.

28 U.S.C. § 2254(d).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Williams v. Taylor*, 529 U.S. 362, 410 (2000).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011).  Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

### *Procedural Bar*

Federal law establishes this Court's jurisdiction over habeas corpus petitions.  28 U.S.C. § 2254.  This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim.  *Id.*  The separate but related theories of exhaustion and procedural bypass operate to require a habeas petitioner to first submit his claims for relief to the state courts.  A habeas corpus petition filed in this Court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

### *Exhaustion*

Section 2254 contains the requirement of exhausting state-court remedies and

20

provides as follows:

> (b)     (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B)     (I) there is an absence of available State corrective process; or
>>
>>> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c)An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.  The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies.  *Id.* § 2254(b)(1)(A).  "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court."  *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997).  Thus, a federal court may consider only those issues that have been properly presented to the highest state court with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the

validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds for relief be stated in the direct appeal or PCR application.  S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976).  If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment.  S.C. R. Civ. P. 59(e).  Failure to do so will result in the application of a procedural bar to that claim by the Supreme Court of South Carolina.  *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[7]  Further, strict time deadlines govern direct appeal and the filing of a PCR application in the South Carolina courts.  For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment.  S.C. App. Ct. R. 203(b)(2), (d)(1)(B).  A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision.  S.C. Code Ann. § 17-27-45(A).

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts.  *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168, 1173 (4th Cir. 1977).  Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the highest South Carolina court through direct

---

[7] In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e) as a procedural bar.  589 F.3d at 162–65.  Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

appeal or through an appeal from the denial of a PCR application, regardless of whether the court actually reached the merits of the claim. *See State v. McKennedy*, 559 S.E.2d 850, 854 (S.C. 2002) (reiterating that discretionary review by the Supreme Court of South Carolina is not required to exhaust available state court remedies: "[South Carolina] has identified the petition for discretionary review to [the Supreme Court of South Carolina] in criminal and post-conviction cases as *outside* South Carolina's standard review process. In [the Supreme Court of South Carolina's] 1990 order, th[e] Court stated that petitions for rehearing and certiorari following an adverse Court of Appeals' decision are not required in order to exhaust all available state remedies." (emphasis in original) (citing *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990)).

*Procedural Bypass*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts. In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See id.* Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion. *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a

23

second appeal that could have been raised at an earlier time. *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991). Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. S.C. App. Ct. R. 203(d)(3), 243. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995). As the United States Supreme Court explained:

> . . . [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim. *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally

bypassed his opportunity for relief in the state courts and in federal court. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim. *Wainwright*, 433 U.S. at 87. In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply. *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

*Cause and Actual Prejudice*

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the Supreme Court of South Carolina in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or where a "fundamental miscarriage of justice" has occurred, *Carrier*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel. *Id.* at 487–89; *Reed*, 468 U.S. at 16. Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default. *Carrier*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

25

As an alternative to demonstrating cause for failure to raise the claim, the petitioner must show a miscarriage of justice. To demonstrate a miscarriage of justice, the petitioner must show he is actually innocent. *See Carrier*, 477 U.S. at 496 (holding a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of someone who is actually innocent"). Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this actual innocence standard, the petitioner's case must be truly extraordinary. *Carrier*, 477 U.S. at 496.

## DISCUSSION

**Procedurally Barred Claims**

Procedural default is an affirmative defense that is waived if not raised by respondents. *Gray v. Netherland*, 518 U.S. 152,165–66 (1996). If the defense is raised, it is the petitioner's burden to raise cause and prejudice or actual innocence; if not raised by the petitioner, the court need not consider the defaulted claim. *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995). Here, Respondent contends Grounds Two, Three, and Four are procedurally barred. [Doc. 19 at 18.]

In Grounds Two, Three, and Four, Petitioner alleges claims of ineffective assistance of appellate counsel for failure to raise various claims. [Doc. 1.] These issues were raised in Petitioner's amended PCR application [App. 352–59]; however, the PCR court did not specifically rule on these claims [8] [App. 401–09], Petitioner did not file a Rule 59(e) motion

_____

[8]In the order dismissing Petitioner's PCR application, the PCR court noted that Petitioner had filed an amended PCR application; in summarizing Petitioner's claims, the PCR court addressed only Petitioner's ineffective assistance of trial counsel claims and not his ineffective assistance of appellate counsel claims. [App. 402.] In the order of dismissal, the PCR court included a section labeled "All Other Allegations" and stated:

with the PCR court, and these claims were not raised in either the *Johnson* petition or

Petitioner's pro se peition[9] [*see* Docs. 19-6, 19-7].  Therefore, these grounds were not fairly

presented to the Supreme Court of South Carolina and are procedurally barred from

federal habeas review unless Petitioner has demonstrated (1) cause for the procedural

default and actual prejudice resulting from the alleged constitutional violation or (2) that a

fundamental miscarriage of justice has occurred.  *See Coleman*, 501 U.S. at 750 (stating

that if an issue is not properly raised to the state's highest court and would be procedurally

impossible to raise not, then it is procedurally barred from federal habeas review);

*Wainwright*, 433 U.S. at 87; *Matthews*, 105 F.3d at 915.

　　Petitioner does not allege that he can establish cause and prejudice with respect to

any of his defaulted grounds or that he is actually innocent.[10]  *See Kornahrens*, 66 F.3d at

---

> As to any and all other allegations that were raised in the application or at the hearing in this matter and not specifically addressed in this Order, the Court finds Applicant failed to present any evidence regarding such allegations.  Accordingly, this Court finds Applicant waived such allegations and failed to meet his burden of proof regarding them.  Therefore, they are hereby denied and dismissed.

[App. 408.]

[9]The Court notes that Petitioner attached a copy of his amended PCR application to his petition for writ of certiorari; however, Petitioner merely requested that the claims raised in the amended PCR application be remanded so that the PCR court could rule on them [Doc. 19-7].  He did not ask the Supreme Court of South Carolina to consider the issues raised in the amended PCR application.  [*See id.*]

[10]Moreover, even if Petitioner had alleged he could establish cause and prejudice with respect to these grounds, it is unlikely Petitioner would be able to overcome the procedural bar.  It has been generally held that *Martinez* does not apply to ineffective assistance of appellate counsel claims.  *See Reed v. Stephens*, 739 F.3d 753, 778 n. 16 (5th Cir. 2014) (declining to consider ineffective assistance of appellate counsel under *Martinez*); *Hodges v. Colson*, 727 F.3d 517, 531 (6th Cir. 2013) (holding that "[u]nder *Martinez's* unambiguous holding our previous understanding of *Coleman* in this regard is

1363 (holding that when a petitioner does not raise cause and prejudice, the court need not consider the defaulted claim). In his response in opposition to the motion for summary judgment, Petitioner reiterates some of his arguments raised in the Petition and appears to raise others that were not included in his Petition. [Doc. 38.] To the extent that Petitioner is attempting to raise new arguments in his response in opposition, new matters cannot be raised in a response in opposition to a motion for summary judgment, *Temple v. Oconee County*, C/A No. 6:13-144-JFA-KFM, 2014 WL 4417702, at *13 (D.S.C. Sept.8, 2014) (citing *White v. Roche Biomedical Labs.*, 807 F.Supp. 1212, 1216 (D.S.C.1992)), and the Court will not address these arguments.

**Merits of Remaining Claim**

Under the AEDPA, a federal court may not grant habeas relief unless the underlying state court decision was contrary to or an unreasonable application of federal law, as determined by the United States Supreme Court, 28 U.S.C. § 2254(d)(1), or based on an unreasonable determination of the facts before the court, *id.* § 2254(d)(2). The Supreme Court has held the "contrary to" and "unreasonable application of" clauses present two different avenues for relief. *Williams*, 529 U.S. at 405 ("The Court of Appeals for the Fourth Circuit properly accorded both the 'contrary to' and 'unreasonable application' clauses independent meaning."). The Court stated there are two instances when a state court decision will be contrary to Supreme Court precedent:

---

still the law—ineffective assistance of post-conviction counsel cannot supply cause for procedural default of a claim of ineffective assistance of appellate counsel"); *Banks v. Workman*, 692 F.3d 1133, 1148 (10th Cir. 2012) (holding *Martinez* applies only to procedural default of a claim of ineffective assistance at trial, not to claim of ineffective assistance of appellate counsel). *But see Ha Van Nguyen v. Curry*, 736 F.3d 1287, 1289 (9th Cir. 2013) (holding that *Martinez* applies where the underlying ineffective assistance of counsel is by appellate counsel).

>A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.

*Id.* at 405–06.  On the other hand, a state court decision is an unreasonable application of Supreme Court precedent when the decision "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407–08; *see also Richter*, 131 S.Ct. at 786 ("Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court. . . . It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.").  Finally, a decision cannot be contrary to or an unreasonable application of Supreme Court precedent unless applicable Supreme Court precedent exists; without applicable Supreme Court precedent, there is no habeas relief for petitioners. *Virsnieks v. Smith*, 521 F.3d 707, 716 (7th Cir. 2008) (citing *Lockhart v. Chandler*, 446 F.3d 721, 724 (7th Cir. 2006); *Simpson v. Battaglia*, 458 F.3d 585, 597 (7th Cir. 2006)); *see Bustos v. White*, 521 F.3d 321, 325 (4th Cir. 2008).

In Ground One, Petitioner argues trial counsel was ineffective in failing to communicate the State's written plea offer to Petitioner and that he would have accepted the plea offer if he had known of it.  [Doc. 1 at 6–7.]  The Court concludes Petitioner is not entitled to federal habeas corpus relief based upon this allegation.

When evaluating a habeas petition based on a claim of ineffective assistance of counsel, assuming the state court applied the correct legal standard—the Supreme Court's holdings in *Strickland v. Washington*, 466 U.S. 668 (1984)—"[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard."[11] *Richter*, 131 S.Ct. at 785. "A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself." *Id.*; *see also Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (stating judicial review of counsel's performance is "doubly deferential when it is conducted through the lens of federal habeas"). Even if a state court decision questionably constitutes an unreasonable application of federal law, the "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 131 S.Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, in such situations, the habeas court must determine whether it is possible for fairminded jurists to disagree that the arguments or theories supporting the state court's decision are inconsistent with Supreme Court precedent. *Id.*

---

[11]In *Strickland*, the Supreme Court established that to challenge a conviction based on ineffective assistance of counsel, a prisoner must prove two elements: (1) his counsel was deficient in his representation and (2) he was prejudiced as a result. 466 U.S. at 687. To satisfy the first prong, a prisoner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To satisfy the second prong, a prisoner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 692. The Supreme Court has cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential," and "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Here, the PCR court addressed Luginbill performance under the standard set forth in *Strickland*. [App. 404–05.] The PCR court found,

> Applicant['s] alleg[ation] Counsel was ineffective for failing to relay a "three year plea offer plus probation" is without merit. Counsel testified that he presented various plea offers to the Solicitor, however the Solicitor never accepted any of the presented offers. The decision whether to offer a plea bargain is within the Solicitor's discretion. State v. Johnson, 287 S.C. 171, 337 S.E.2d 204, 205 (1985). Counsel further testified, Solicitor never offered a plea deal in this case. Based on the foregoing, this Court finds that Applicant has not shown that trial counsel's performance fell below "professional norms." Cherry, 300 S.C. at 117, 385 S.E.2d at 625 (citing Strickland).
>
> ***
>
> Based on all the foregoing, this Court finds and concludes that Applicant has not established any constitutional violations or deprivations that would require this Court to grant his application. Therefore, this application for post-conviction relief must be denied and dismissed with prejudice.

[*Id.* at 407–08.] The PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent. Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent. The PCR court concluded that Petitioner failed to establish that Luginbill's representation fell below an objectively reasonable standard or any resulting prejudice. [App. 408.]

The record supports the PCR court's determination. The Court notes that the PCR court found that Luginbill's testimony was very credible and Petitioner's testimony was not

as credible.  [App. 404.]  The PCR court's determination with respect to credibility is entitled to deference.  *Cagle v. Branker,* 520 F.3d 320, 324 (4th Cir. 2008)  ("[F]or a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear." (citing 28 U.S.C. § 2254(e)(1))).   At the PCR hearing, in response to whether there were any plea negations in this case, Luginbill testified that, at one point he had offered ABHAN to the chief of police and was close to a deal but the solicitor's office would not take it.  [App. 382.]  Luginbill stated that the solicitor's officer made no offers after the "initial back and forth."  [*Id.*]  He further stated that he talked about "three years with a probationary sentence," and Petitioner had told him that he would accept that offer; however, the solicitor's office was not interested.  [*Id.*]  Thus, the PCR court's decision was not contrary to or an unreasonable application of applicable Supreme Court precedent, and Petitioner is not entitled to habeas corpus relief on this ground.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Respondent's motion for summary judgment be GRANTED and the Petition be DENIED.  In light of the Court's recommendation, Petitioner's motion to supplement evidence to support Petitioner's arguments should be DENIED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

January 15, 2016
Greenville, South Carolina

32